Action brought by Erving Garrity against the defendants John Davis and the automobile liability insurer on the car driven by Davis. While he was driving with Garrity as his guest, the car collided with a truck, and Garrity sustained personal injuries as the result of alleged negligence of Davis. Upon the trial of the issues under the evidence, the jury found *Page 2 
that Davis was causally negligent in operating the car and that as a result thereof Garrity was injured and sustained damages, which the jury assessed at $4,000. Upon the evidence and the jury's findings the court entered judgment against defendants for plaintiff's recovery of the damages assessed by the jury. Defendants appealed from the judgment.
The personal injuries because of which plaintiff sustained the damages, for the recovery of which the judgment appealed from was entered against defendants, were sustained by plaintiff at about 6:30 p.m., on December 14, 1941, while riding as a guest in a car operated by Davis. He, in driving southward at thirty-five miles per hour on the west half of a twenty-feet-wide concrete roadway, was gradually overtaking a southbound car driven by Vander Heiden, likewise on that half of the roadway; and when Davis was forty to sixty feet behind that car he intended to pass on the left side thereof. As Davis was nearing the place of collision, a northbound truck driven by Charles Besaw was approaching on the east half of the concrete roadway and Davis testified he observed the headlights of other traffic coming toward him some considerable distance away. A collision, which resulted in injury to plaintiff, occurred upon the Davis car entering the east half of the roadway and continuing diagonally across the pathway of the northbound truck driven by Besaw, and in doing so the right side of the trunk on the rear of the Davis car struck the right front corner of the truck. And in so crossing the east half of the roadway and colliding with the truck, the Davis car tipped over and came to a stop in a ditch *Page 3 
east of the roadway. Davis ran away, but plaintiff, who was seriously injured, remained in the car. The jury found that the collision was caused by Davis' negligence in his management and control of the car, and that such negligence was not
the result of his lack of skill and judgment.
Defendants contend on this appeal that the collision was not caused by any negligence of Davis in his management, control, and operation of the car. They claim that as Davis was driving on his right side of the roadway and overtaking Vander Heiden's car, an emergency arose by reason of the sudden, unexpected stopping thereof, which necessitated immediate application of the brakes on the Davis car and resulted in the skidding and his loss of control thereof because of patches of ice along the west edge of the concrete roadway; that such skidding resulted solely from Davis' application of the brakes, without his turning the steering wheel or in any other manner managing the car so as to cause it to skid; and that as the right wheels of the car came upon those patches of ice it caused the car to skid abruptly to the left across the center line and onto and beyond the east half of the roadway. In this connection, defendants claim that Davis had not previously driven a car equipped with four-wheel hydraulic brakes and had no prior occasion to apply such brakes on ice; and that he and plaintiff had observed occasional patches of ice on the edges of the concrete roadway, — the center of which was generally clear of ice.
Defendants' contentions and claims cannot be sustained. In view of the testimony to the following effect, which the jury could consider credible, it was within its province to find that Davis was causally negligent in his management and control of the car and that such negligence was not the result of his lack of skill and judgment, to wit:
The patches of ice on the concrete roadway were only along the outer edges, — the middle thereof was generally clear of ice. Besaw testified: "I was heading north and saw Vander *Page 4 
Heiden's car coming toward me. I saw another car pull out with his headlight. Got his one headlight inside and pulled in. He just got his headlight beyond the car. Then it happened he went into a skid and came across the road in front of me. The car was tipping over as it came out from the other car. It went into a skid when he turned back. This car was already tipped over on its right side as it went across the road. At the time I saw the car tipping, it was then on the dry pavement. The car in back went into a skid and went directly across the road in front of me. The car was tipped over when it went across on its side. Struck my bumper. I swung left and came around him. His car caught the end of my bumper or truck. It continued to tip until it tipped completely over on its right side when it was in the ditch.
"Q. About how far away was your truck when this car came directly across the road? A. I had just time to swing my truck to the left and miss the Vander Heiden car and get around the back of this Davis car. Just enough room to get between the two of them. At the moment the Davis car came across the road, the Vander Heiden car had not come to a complete stop; it was still moving; if he wasn't moving, I couldn't get between the cars. The center of the road was clear.
"Q. Was there ice on your side of the road at the place of the accident? A. No.
"Q. How far out into the highway on the left hand side of the road as you approached did the ice extend from the ditch?A. I don't know how far. I saw a mark where his tire slid on the ice when he put his brakes on. That is the way it looked to me. Pulled in and put his brakes on because he was close to the other car.
"Q. Did you notice how long the skid mark was? A. Not very long. Skidded on the ice and went off the ice. That is when the car went into a skid.
"Q. You saw the skid marks on the right wheels of the icy spots? A. Yes."
The plaintiff testified: "I don't know just how it happened, I didn't feel no skid." On adverse examination before trial, he testified:
"Q. When the car stopped, what did John do? A. I don't know if he was going to turn to go by it or put on his brakes. *Page 5 
There was no sudden stop; there wasn't much retarding speed; he kept right on except that he went across the road. He didn't slow down very much when he went across the road."
As there was evidence which the jury could consider credible in relation to facts and circumstances that admitted of the jury's findings, and by reason of which there were violations by defendant of the provisions in secs. 85.15(1) and (2), and 85.40(1), Stats., the judgment must be affirmed.
By the Court. — Judgment affirmed.